## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No. 12-33189

BARTOLOMEA JOSEPH MONTANARI
LISA JAYNE MONTANARI

Debtors

DAVID N. KLOEBER, JR.

Plaintiff

v.

Adv. Proc. No. 13-3079

BARTOLOMEA JOSEPH MONTANARI
and LISA JAYNE MONTANARI

Defendants

### MEMORANDUM ON DAVID N. KLOEBER, JR.'S
### MOTION FOR SUMMARY JUDGMENT

APPEARANCES:     FROST BROWN TODD LLC
                 Jason M. Bergeron, Esq.
                 Joseph A. Kelly, Esq.
                 150 3rd Avenue South
                 Nashville, Tennessee  37201

                 Patricia K. Burgess, Esq.
                 250 West Main Street
                 Suite 2800
                 Lexington, Kentucky  40507
                 Attorneys for Plaintiff

                 WILLIAM E. MADDOX, JR., LLC
                 William E. Maddox, Jr., Esq.
                 Post Office Box 31287
                 Knoxville, Tennessee  37930
                 Attorney for Defendants

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Plaintiff filed a Complaint in Objection to Dischargeability of Debts Owed by Bartolomea Joseph and Lisa Jayne Montanari Pursuant to 11 U.S.C. § 523 and 11 U.S.C. § 727 (Complaint), asking the court to award him a judgment of no less than $14,500,000.00, together with attorneys' fees, costs, and punitive damages; to determine that debts owed by Defendants to him are nondischargeable under 11 U.S.C. § 523(a)(2), (4), and/or (6); and to deny Defendants their discharge pursuant to 11 U.S.C. § 727(a)(2), (3), (4), and/or (7).  Currently before the court is Plaintiff's Motion for Summary Judgment [Doc. 40].  Although Plaintiff titled the instant motion a Motion for Summary Judgment, Plaintiff's motion seeks only partial summary judgment because Plaintiff's motion concerns only his claims under § 523(a)(2), (4), and/or (6).

In support of his motion, Plaintiff filed the required statement of undisputed material facts [Doc. 42]; a memorandum of law [Doc. 41]; the Declaration of David N. Kloeber, Jr. [Doc. 41-1]; a Loan Modification Agreement dated January 16, 2009 [Doc. 41-2]; an excerpt from the 2004 examination of Bartolomea Montanari taken March 6, 2013 (B. Montanari 2004 Exam) [Doc. 41-3]; an excerpt from the 2004 examination of Lisa Montanari taken March 6, 2013 (L. Montanari 2004 Exam) [Doc. 41-4]; a Forbearance Agreement dated May 3, 2010 [Doc. 41-5]; Defendants' Answers to Plaintiff's Request to Admit [Doc. 41-6]; a summary of transfers from Monties Resources and Emlyn Coal to Barto Properties LLC from January 2008 to January 2009 [Doc. 41-7]; a summary of deposits to Bella Luca Properties from January 2009 to November 2011 [Doc. 41-8]; a summary of Shugart transfers [Doc. 41-9]; a summary of Emlyn Coal Processing LLC credit card transactions [Doc. 41-10]; an email chain regarding "Emlyn forecast" between October 19 and October 24, 2008 [Doc. 41-11]; a Lease Agreement with Fountain Leasing, LLC dated November 6, 2008 [Doc. 41-12]; a Continuing Guaranty of Lease executed by Plaintiff to lessee Montie's Resources, LLC, dated November 6, 2008 [Doc. 41-13];

Frattalone Tractor Company invoice number 11408 for $175,000.00 dated November 4, 2008 [Doc. 41-14]; Frattalone Tractor Company invoice number 11408 for $275,000.00 dated November 4, 2008 [Doc. 41-15]; a letter dated November 14, 2008, from Frattalone Tractor Company, Inc. [Doc. 41-16]; Frattalone Tractor Company, Inc. check number 2014 dated November 14, 2008, payable to Bart Montanari in the amount of $100,000.00 [Doc. 41-17]; Community Trust Bank cashier check number 1184832 dated January 6, 2009, payable to Brian Shugart, Amy Shugart, and Landmark Real Estate Co. in the amount of $100,000.00 [Doc. 41-18]; Indictment to Grand Jury in United States of America v. Bartolomea Joseph Montanari, CR No. 14-161 ADM/JJK filed in the United States District Court for the District of Minnesota filed May 21, 2014 [Doc. 41-19]; an excerpt from the deposition of Bartolomea Joseph Montanari taken May 6, 2014 [Doc. 41-20]; an excerpt from deposition of Lisa Jayne Montanari taken May 6, 2014 [Doc. 41-21]; and Defendants' First Set of Interrogatories and Requests for Production of Documents Answers dated April 23, 2014 [Doc. 41-22].

Defendants timely responded to the motion by filing the requisite response to Plaintiff's statement of undisputed material facts [Doc. 44]; a brief [Doc. 45]; an excerpt from the deposition of Bruce Smith taken May 7, 2014 [Doc. 45-1]; an excerpt from the B. Montanari 2004 Exam [Doc. 45-2]; an excerpt from the deposition of David Kloeber, Jr. taken May 7, 2014 [Doc. 45-3]; an email dated June 30, 2008, from Plaintiff to Defendant Bartolomea Montanari [Doc. 45-4]; an email chain concerning equipment dated October 30, 2008 [Doc. 45-5]; an email chain regarding "Final Emlyn Coal 4-16-10(2).xls" between April 18 and April 21, 2010 [Doc. 45-6];[1] an email regarding "Re-Structure" dated February 22, 2010 [Doc. 45-8]; and Defendants' Answers to Plaintiff's Request to Admit [Doc. 45-9].  Plaintiff filed replies to Defendants' response to his motion for summary judgment [Doc. 58] and to their response to Plaintiff's

[1] Defendants reference an Exhibit G; however, the same document is attached as Exhibit F and Exhibit G.

2

statement of undisputed material facts [Docs. 58-1, 59], which was also supported by the

Declaration of Bruce Smith [Doc. 58-2]. Finally, with court authorization, Defendants filed a

sur-reply to Plaintiff's reply brief[2] [Doc. 71] and to Plaintiff's reply to Defendants' responses to

the statement of undisputed material facts [Doc. 70].[3] Plaintiff also recently submitted a

supplemental filing to notify the court of the result of the trial on federal criminal charges in

Minnesota against Bartolomea Montanari. [Doc. 78.] This is a core proceeding. 28 U.S.C. §

157(b)(2)(I) and (J).

Because Plaintiff has failed to establish that there exists no genuine issue of material fact

on his claims against Defendants under 11 U.S.C. § 523(a)(2), (4), or (6), his request for

summary judgment on those claims is denied.

## I. Facts

The following facts are not in dispute.[4] In July 2007, Plaintiff and Bartolomea

Montanari,[5] who was Chief Manager/President of Montie's Resources, LLC (Montie's) at all

times relevant to this adversary proceeding, entered into a business relationship through which

Plaintiff agreed to finance the purchase of Emlyn Coal Processing, LLC (Emlyn Coal) to pursue

---

[2] Plaintiff initially sought court approval to file the reply [Doc. 52]. Before a hearing on that motion, Plaintiff filed his reply brief [Doc. 58] and a Reply Statement and Objection in Furtherance of Plaintiff's Statement of Undisputed Material Facts [Doc. 59]. At the hearing on Plaintiff's motion to file the reply, the court allowed Defendants ten days to file a sur-reply [Doc. 65].

[3] In addition, the court takes judicial notice of undisputed facts and documents of record in Defendants' bankruptcy case pursuant to Rule 201 of the Federal Rules of Evidence.

[4] Plaintiff objects under Federal Rule of Civil Procedure 56(c)(2) (made applicable to these proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure) to various facts posited by Defendants without citation to admissible evidence. [Doc. 59.] Defendants respond by noting that Plaintiff had cited only to the complaint for certain factual assertions and, just as the answer is not admissible as evidence in favor of Defendants, the unsworn complaint is not admissible as evidence in favor of Plaintiff. [Doc. 70.] The court finds Plaintiff's objection and Defendants' response well founded and, thus, has not considered any facts for which citation to admissible record evidence was not provided except for those facts that either of the parties admitted in their various filings (specifically, statements of undisputed material facts and admissions by Defendants in their answer to allegations of the complaint).

[5] References to Bartolomea Montanari, individually, shall be to "Montanari." References to Lisa Montanari, individually, shall be to "L. Montanari."

coal mining activities in Whitley County, Kentucky. [Doc. 41-1 at ¶ 2; Doc. 42 at ¶¶ 1-2; Doc. 44 at ¶¶ 1-2.]  As part of the transaction, Plaintiff and Montanari each held 50% ownership of Emlyn Coal, and Montie's Resources, LLC was to cull and mine coal, while Emlyn Coal was to process and sell it. [Doc. 41-1 at ¶¶ 2-3; Doc. 42 at ¶¶ 3-4; Doc. 44 at ¶¶ 3-4.]  Additionally, Montanari was responsible for Emlyn Coal's operations, including acquiring, mining, processing, and selling coal, with Plaintiff and his staff responsible for Emlyn Coal's day-to-day accounting, payroll, taxes, and bill payment. [Doc. 41-1 at ¶ 2; Doc. 42 at ¶ 7; Doc. 44 at ¶ 7.] As partial security for the financing, Montie's, through Montanari, and Defendants, individually, each executed a guaranty for repayment of all sums owed to Plaintiff. [Doc. 42 at ¶¶ 5-6; Doc. 44 at ¶¶ 5-6.]

By September 2007, Emlyn Coal was beginning to experience cash shortages from lack of coal production.  [Doc. 1 at ¶ 12; Doc. 8 at ¶ 12.]  In November 2007, existing notes were in default, and Emlyn Coal called a board meeting to discuss financial conditions and operations. [Doc. 42 at ¶ 9; Doc. 44 at ¶ 9.]  In April 2008, additional capital improvements were needed to increase and/or improve operations, and Plaintiff agreed to personally guarantee an additional working capital loan with Alliance Bank that was secured by Emlyn Coal's receivables. [Doc. 42 at ¶¶ 10-11; Doc. 44 at ¶¶ 10-11.]  Plaintiff also made equipment acquisition loans to Montie's in order to increase the production available to be processed by Emlyn Coal, and in October 2008, Plaintiff and Montanari met and discussed the purchase of a Caterpillar D10N bulldozer (Tractor) from Frattalone Tractor Company. [Doc. 41-1 at ¶ 10; Doc. 42 at ¶¶ 12, 39; Doc. 44 at ¶¶ 12, 39.]

Montanari arranged to finance purchase of the Tractor through a Lease Agreement dated November 6, 2008, in the amount of $275,000.00 between Montie's and Fountain Leasing, LLC,

4

and Plaintiff personally guaranteed the lease; however, the actual invoice and price of the Tractor

was $175,000.00. [Docs. 41-12, 41-13, 41-14; Doc. 42 at ¶¶ 41-43; Doc. 44 at ¶¶ 41-43.]  During

October 2008, Montanari represented that the Tractor cost approximately $260,000.00 plus

$15,000 in delivery charges. [Docs. 41-1at ¶ 10, 41-11; Doc. 42 at ¶ 40.[6]]  When Frattalone

Tractor Company received the $100,000.00 overpayment, it notified Montanari, who directed

Frattalone Tractor Company to issue a certified check in that amount payable to himself. [Docs.

41-16, 41-17; Doc. 42 at ¶¶ 46-47; Doc. 44 at ¶¶ 46-47.]  Montanari negotiated the $100,000.00

certified check on January 6, 2009, and on that same date, had issued a cashier's check payable

to Brian Shugart, his home builder. [Docs. 41-17, 41-18; Doc. 42 at ¶¶ 48-49; Doc. 44 at ¶¶ 48-

49.]  On July 5, 2012, Fountain Leasing, LLC filed suit against Plaintiff for payment of the

balance owed pursuant to the financing lease on the Tractor, the majority of which consisted of

the $100,000.00 overage paid to Shugart for the benefit of Montanari. [Doc. 42 at ¶ 51; Doc. 44

at ¶ 51.]

In addition, from 2008 until early 2009, in response to Montanari's representations as to

funding needs of Emlyn Coal and Montie's, Plaintiff provided approximately $1,600,000.00 in

financing for equipment.  [Doc. 41-1 at ¶ 4; Doc. 42 at ¶ 29; Doc. 44 at ¶ 29.]

In November 2008, Montanari felt he was positioned to successfully operate Emlyn Coal

on his own and sought to purchase Plaintiff's interest.  [Doc. 1 at ¶ 16; Doc. 8 at ¶ 16.]  Two

months later, Montanari purchased Plaintiff's interest in Emlyn Coal, and by March 2009,

Plaintiff's office had transferred all books, records, and accounting functions to Montanari. [Doc.

41-1 at ¶ 5; Doc. 42 at ¶¶ 14-15; Doc. 44 at ¶¶ 14-15.]  Plaintiff financed the purchase, and a

---

[6] Although Defendants failed to provide admissible evidence in support of their denial that "B. Montanari fabricated or had fabricated an invoice for $275,000.00" [Doc. 42 at ¶ 44; Doc. 44 at ¶ 44], the court finds that Plaintiff's support for the statement of fact, a copy of the invoice attached as Exhibit O to Doc. 41, is not admissible to establish such an assertion.

Loan Modification Agreement dated January 16, 2009, between Plaintiff, Emlyn Coal, Montie's, Defendants, and The Bartolomea and Lisa Montanari Family Limited Partnership (Family L.P.) was executed by Montanari individually and as President and General Partner. [Docs. 41-1 at ¶ 5, 41-2, 41-3 at p. 23; Doc. 42 at ¶¶ 14, 16; Doc. 44 at ¶¶ 14, 16.]  Although her signature appears on the Loan Modification Agreement, L. Montanari has not admitted signing the agreement. [Doc. 41-4 at p. 15.[7]]  The agreement, by its terms, acknowledged the validity of the underlying loan documents and the outstanding indebtedness, which was secured by substantially all of the assets of Emlyn Coal and Montie's.  [Doc. 41-2.[8]]

Under the terms of the purchase of Plaintiff's interest in Emlyn Coal, Montanari was authorized to withdraw from Montie's and/or Emlyn Coal up to $50,000.00 per month in cumulative salary, distribution, or other form of compensation or profit as long as no event of default had occurred. [Doc. 41-2; Doc. 42 at ¶¶ 18-19; Doc. 44 at ¶¶ 18-19.]   Additionally, in association with the financing, all interest payments were deemed current as of execution of the Loan Modification Agreement, and the first principal payment to Plaintiff was due in March 2009; however, the March 2009 payment was not made, nor were any subsequent payments made to Plaintiff.  [Doc. 42 at ¶¶ 20-21; Doc. 44 at ¶¶ 20-21.]  By May 2009, Emlyn Coal had numerous non-monetary defaults for its failure to pay various withholding and coal severance taxes.  [Doc. 1 at ¶ 18; Doc. 8 at ¶ 18.]

---

[7] Although the court does not accept the inadmissible denial of L. Montanari contained in Defendants' response to Plaintiff's statement of undisputed material facts [Doc. 44] or the unsworn denial, signed by counsel, in Defendants' Answers to Plaintiff's Request to Admit, pursuant to Rule 56(c)(3) of the Federal Rules of Civil Procedure, the court may consider other materials in the record, including the transcript of L. Montanari's Rule 2004 exam excerpted by Plaintiff at exhibit 4 to Plaintiff's brief [Doc. 41], in which L. Montanari, while acknowledging that the signature on the document looks like hers, did not recognize the document and did not remember signing the Loan Modification Agreement.  In any event, even if the court were to accept as an undisputed fact that L. Montanari signed the agreement, such would not provide sufficient ground upon which to grant summary judgment on Plaintiff's motion.

[8] Defendants' denial of this fact in response to Plaintiff's statement of undisputed material facts [Doc. 44 at ¶ 17] is ineffective because it cites to the unsworn (and thus inadmissible as proffered by Defendants) denial in Defendants' Answers to Plaintiff's Request to Admit [Doc. 45-9].  *See* Fed. R. Civ. P. 56(c)(2).

After Plaintiff retained counsel to start foreclosure proceedings against Emlyn Coal,

Montie's, and Defendants, the parties entered into a Forbearance Agreement effective April 1,

2010, through which Plaintiff agreed to forbear enforcement of the previous indebtedness in the

amount of $11,574,775.03 (calculated to April 5, 2010) in exchange for compliance by Emlyn

Coal, Montie's, Defendants, and the Family L.P. to all terms of the Forbearance Agreement.

[Doc. 41-5; Doc. 42 at ¶¶ 23-25, 33; Doc. 44 at ¶¶ 23-25, 33.]  Defendants additionally

guaranteed payment of the indebtedness and made payments until December 2010. [Doc. 42 at

¶¶ 25, 28; Doc. 44 at ¶¶ 25, 28.]  Although all signatures on the Forbearance Agreement are

notarized, L. Montanari expressly denies executing the Forbearance Agreement. [Doc. 41-5;

Doc. 42 at ¶ 27; Doc. 44 at ¶ 27.]  Plaintiff relied upon the execution of the Forbearance

Agreement by both Defendants, and he considered L. Montanari a necessary party to the

Forbearance Agreement.  [Doc. 41-1 at ¶¶ 6-7; Doc. 42 at ¶¶ 52-53; Doc. 44 at ¶¶ 52-53.]

Notwithstanding the defaults, from March 2009 forward, Montanari continued to make

monthly withdrawals from Emlyn Coal and/or Montie's for his own personal use while Plaintiff

continued to hold a security interest in all of the assets of Montie's and/or Emlyn Coal.  [Doc. 42

at ¶¶ 31 (second), 33; Doc. 44 at ¶¶ 31 (second), 33.]  Between 2009 and 2012, Defendants

utilized a credit card issued to Emlyn Coal to make personal purchases of at least $70,084.15

unrelated to Emlyn Coal's business activities. [Doc. 41-10; Doc. 42 at ¶¶ 37-38; Doc. 44 at ¶¶

37-38.]  Montie's bank records reflect that Montanari withdrew cash and/or transferred

$742,600.23 to Bella Luca Properties, LLC and Barto Properties, LLC, two Minnesota limited

liability companies, and at least $1,067,419.00 was withdrawn and paid to Montanari while

Montie's and/or Emlyn Coal were in default. [Docs. 41-6 at No. 11, 41-7; Doc. 42 at ¶¶ 30, 32;

Doc. 44 at ¶¶ 30, 32.]  Montanari also made direct payments or transfers to Brian Shugart in the

amount of $459,708.93 from Emlyn Coal and in the amount of $150,000.00 from Montie's

between 2009 and 2011. [Doc. 41-9; Doc. 42 at ¶¶ 34-36; Doc. 44 at ¶¶ 34-36.]

During their depositions taken in this adversary proceeding in May 2014, Defendants

repeatedly invoked their Fifth Amendment rights when questioned about whether they had made

any revisions or corrections to their personal income tax returns related to "loans to shareholder"

entries taken from Montie's and Emlyn Coal and whether any revisions were made to income tax

returns of financial statements for Emlyn Coal, Montie's, or Bella Luca Properties, LLC. [Docs.

41-20, 41-21; Doc. 42 at ¶¶ 56-57; Doc. 44 at ¶¶ 56-57.]  Later in May 2014, Montanari was

indicted, in part, for mail and wire fraud relating to the Tractor transaction, and a jury found him

guilty of the mail and wire fraud charges in November 2014.  [Doc. 41-19; Doc. 78-1.]

## II.  Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law[,]" utilizing the following procedures:

(1) ***Supporting Factual Positions***.  A party asserting that a fact cannot be or is
genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including
depositions, documents, electronically stored information, affidavits or
declarations, stipulations (including those made for purposes of the motion
only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or
presence of a genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact.

(2) ***Objection That a Fact Is Not Supported by Admissible Evidence***.  A party
may object that the material cited to support or dispute a fact cannot be presented
in a form that would be admissible in evidence.

(3) ***Materials Not Cited***.  The court need consider only the cited materials, but it
may consider other materials in the record.

> (4) ***Affidavits or Declarations***.  An affidavit or declaration used to support or
> oppose a motion must be made on personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant or declarant is competent to
> testify on the matters stated.

Fed. R. Civ. P. 56(c) (applicable in adversary proceedings through Rule 7056 of the Federal

Rules of Bankruptcy Procedure).   When deciding a motion for summary judgment, the court

does not weigh the evidence to determine the truth of the matter asserted but simply determines

whether a genuine issue for trial exists.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249

(1986).  "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Id.*

As the moving party, Plaintiff bears the burden of proving, based upon the record before

the court, that he is entitled to judgment as a matter of law because there is no genuine dispute

concerning any material fact, such that the defenses alleged are factually unsupported. *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The burden then shifts to Defendants to prove

that there are genuine disputes of material fact for trial; however, they may not rely solely on

allegations or denials contained in the pleadings because reliance upon a "mere scintilla of

evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc*., 437

F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp*.,475 U.S. 574, 586 (1986).  The facts and all resulting inferences are viewed in a light most

favorable to Defendants as non-movants, with the court to decide whether "the evidence presents

a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided

that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 243.  Nevertheless, when

"the record taken as a whole could not lead a rational trier of fact to find for the non-moving

party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

### III.  Analysis

As previously noted, although Plaintiff's motion asserts a right to summary judgment against Defendants, it is limited to Plaintiff's claims that the debts owed to him by Defendants are nondischargeable under § 523 of the Bankruptcy Code.  Because Plaintiff's complaint opposes dischargeability under both § 523 and § 727, the motion for summary judgment actually is a motion for partial summary judgment.

Concerning Plaintiff's § 523 claims, he asserts a right to summary judgment against Defendants as follows:

A.  under § 523(a)(2)(A) for

    1.  debt encompassed by the Forbearance Agreement totaling $11,574,775.03 as of April 5, 2010 [Doc. 41 at pp.  9-12];

    2.  debt related to the Tractor totaling $275,000.00 [Doc. 41 at pp. 17-19]; and

    3.  debt resulting from withdrawals by Montanari for use other than for operations of Emlyn Coal and/or Montie's from 2008 through 2009 totaling $742,600.23 [Doc. 41 at pp. 19-20];

B.  under § 523(a)(2)(B) for debt encompassed by the Forbearance Agreement totaling $11,574,775.03 as of April 5, 2010 [Doc. 41 at pp. 20-22];

C.  under § 523(a)(4) for

    1.  debt arising from allegedly unauthorized withdrawals from Montie's and Emlyn Coal totaling at least $1,747,212.08 [Doc. 41 at pp. 12-16] and

    2.  debt arising from withdrawals by Montanari for use other than for operations of Emlyn Coal and/or Montie's from 2008 through 2009 totaling $742,600.23 [Doc. 41 at pp. 19-20]; and

D.  under § 523(a)(6) for debt arising from allegedly unauthorized withdrawals from Montie's and Emlyn Coal totaling at least $1,747,212.08 [Doc. 41 at pp. 16-17].

In addition to the threshold determination that Plaintiff's motion seeks only partial summary judgment on his claims, the court finds that Plaintiff's arguments, which focus on the

alleged misdeeds of Montanari, are wholly inadequate for summary judgment on any claim
against L. Montanari. Accordingly, Plaintiff's motion is summarily denied as to L. Montanari.[9]

### A. Section 523(a)(2)(A)

Plaintiff first argues that he is entitled to summary judgment pursuant to § 523(a)(2)(A)
because Defendants presented him with the Forbearance Agreement that had not been
legitimately executed by both Defendants, knowing that he would not have entered into the
agreement had he known L. Montanari's signature was forged. Plaintiff also argues that the
circumstances surrounding the Tractor purchase, from which Montanari allegedly fraudulently
received an unauthorized $100,000.00 for personal use, should preclude discharge of the entire
debt for the Tractor totaling $275,000.00. Finally, Plaintiff argues that Montanari's allegedly
unauthorized transfers totaling $742,600.23 in 2008 and 2009 should be nondischargeable
because of Montanari's misrepresentations concerning the use of the funds.

Under 11 U.S.C. § 523(a)(2)(A), a debtor is not discharged from any debt "for money,
property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by []
false pretenses, a false representation, or actual fraud, other than a statement respecting the
debtor's or an insider's financial condition . . . ." In order to satisfy the requirements of §
523(a)(2)(A), Plaintiff must prove that Defendants obtained money, property, or services through
material misrepresentations that Defendants knew were false or were made with gross
recklessness, that Defendants intended to deceive Plaintiff, that Plaintiff justifiably relied on
Defendants' false representations, and that Plaintiff's reliance was the proximate cause of his
losses. *See McDonald v. Morgan (In re Morgan)*, 415 B.R. 644, 649 (Bankr. E.D. Tenn. 2009).

---

[9] Defendants argue in their final reply brief [Doc. 71 at pp. 7-8] that the court should award summary judgment in
favor of L. Montanari under Rule 56(f) of the Federal Rules of Civil Procedure. This the court declines to do
because Defendants have not moved for summary judgment on claims against L. Montanari and have not otherwise
presented evidence supporting any finding that the undisputed, material facts require a finding in favor of L.
Montanari.

In essence, Plaintiff must prove fraud in the inducement by Defendants; however, the court must construe § 523(a) liberally in favor of Defendants and strictly against Plaintiff, who bears the burden of proving the necessary elements by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

Material misrepresentations under § 523(a) are "substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision." *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 761 (Bankr. E.D. Tenn. 2003) (citations omitted); *see also First Interstate Bank v. Greene (In re Greene)*, 96 B.R. 279, 283 (B.A.P. 9th Cir. 1989) ("A statement can be materially false if it includes information which is 'substantially inaccurate' and is of the type that would affect the creditor's decision making process."); *McCallum v. Pixley (In re Pixley)*, 456 B.R. 770, 782 (Bankr. E.D. Mich. 2011) (noting that a material fact "must be of enough importance in the matter that a reasonable person would be likely to rely on it"). Additionally, "[s]ilence regarding a material fact can constitute a false representation actionable under § 523(a)(2)(A)." *Fee v. Eccles (In re Eccles)*, 407 B.R. 338, 342 (B.A.P. 8th Cir. 2009) (citation omitted). Representations are only material if they touch upon the "essence" of the transaction. *Copeland*, 291 B.R. at 761.

In the context of § 523(a)(2)(A), "false representations and pretenses encompass statements that falsely purport to depict current or past facts." *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983), and involve "implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *Copeland*, 291 B.R. at 760 (citations omitted). "[T]he mere breach of a promise to pay does not establish the existence of an intent to

12

defraud." *Bartson v. Marroquin (In re Marroquin)*, 441 B.R. 586, 593 (Bankr. N.D. Ohio 2010).

"Instead, *central to the concept of fraud is the existence of scienter* which, for the purposes of

§ 523(a)(2)(A), requires that it be shown that at the time the debt was incurred, *there existed no*

*intent on the part of the debtor to repay the obligation*." *EDM Mach. Sales, Inc. v. Harrison (In*

*re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (citations omitted) (emphasis added);

*see also Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997) (stating that an honest belief

that the representation is true, even if unreasonably so, "is an insufficient basis for deceit").

Actual fraud, i.e., "any deceit, artifice, trick, or design involving direct and active operation of

the mind, used to circumvent or cheat another," may also form the basis of a nondischargeability

determination under § 523(a)(2)(A). *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000)

(quoting 4 *Collier on Bankruptcy* ¶ 523.08[1][3], p. 523-45 (15th ed., Lawrence P. King ed.,

2000)).

Under Sixth Circuit authority, a subjective standard determines fraudulent intent,

*Rembert*, 141 F.3d at 281, which may be "inferred as a matter of fact" based on the totality of the

circumstances when a defendant has engaged in conduct that was "somewhat blameworthy,"

although mere negligence or evidence of "[a] 'dumb but honest' [debtor] does not satisfy the

test." *Copeland*, 291 B.R. at 759, 765-66 (citations omitted).

> A subjective approach, of course, requires that the trier-of-fact focus solely on the
> individual characteristics of the debtor.  Yet, like an objective approach, a
> subjective approach still entails the utilization of circumstantial evidence given
> that a debtor will rarely, if ever, admit to acting in a fraudulent manner; helpful in
> this regard are many of the traditional indicia of fraud – e.g., a suspicious timing
> of events, insolvency, transfers to family members or other insiders.  In utilizing
> such indicia, however, the Sixth Court cautioned against "factor-counting,"
> instead holding "[w]hat courts need to do is determine whether all the evidence
> leads to the conclusion that it is more probable than not that the debtor had the
> requisite fraudulent intent."

*Harrison*, 301 B.R. at 854 (quoting *Rembert*, 141 F.3d at 282; other citations omitted).  The

existence of certain badges of fraud, including whether a defendant made any effort to perform,

the chronology of events, the defendant's financial solvency at the time, adequacy of records

kept, and whether any unusual transfers also occurred, are relevant in the analysis, although

"'[w]hat courts need to do is determine whether all the evidence leads to the conclusion that it is

more probable than not that the debtor had the requisite fraudulent intent.'" *Marroquin*, 441 B.R.

at 593-94 (quoting *Rembert*, 141 F.3d at 282).

The determination of nondischargeability often comes down to which witnesses are most

credible and a debtor's conduct prior to, at the time of, and subsequent to the representations at

issue. *See Copeland*, 291 B.R. at 766; *Commercial Bank & Trust Co. v. McCoy (In re McCoy)*,

269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001).  Indeed, as explained by Judge Richard Stair just

last year:

> It is well-settled that issues concerning credibility and intent are questions
> of fact that must be resolved by observing a witness's demeanor and presence on
> the stand. *See, e.g., Van Daele Bros., Inc. v. Thoms (In re Thoms)*, 505 F. App'x
> 603, 605 (8th Cir. 2013) ("Whether a debtor acted willfully and maliciously
> involves a finding of intent – a question of fact."); *Schoenbaum v. Firstbrook*, 405
> F.2d 215, 218 (2d Cir. 1968) (finding that summary judgment is not appropriate
> when there are "issues as to the knowledge, intent and motive which will require a
> full trial with an opportunity to observe the demeanor of the witnesses, and to
> conduct cross-examination in open court."); *Nev. Prop. 1 LLC v. D'Amico (In re
> D'Amico)*, 509 B.R. 550, 557 (S.D. Tex. 2014) ("The debtor's subjective motive
> to cause harm, however, is a question of fact[.]"); *Ross v. Cecil Cnty. Dep't of
> Social Servs.*, 878 F. Supp. 2d 606, 621 n.26 (D. Md. 2012) ("Resolutions of
> questions of intent often depend[] upon the credibility of the witnesses, which can
> best be determined by the trier of facts after observation of the demeanor of the
> witnesses during direct and cross examination. It is impossible to weigh the
> credibility of witnesses based on their affidavits and the Court at summary
> judgment does not have . . . the benefit of cross examination to evaluate biases
> and to establish the ability of witnesses to observe what occurred." (internal
> citations, quotation marks, and brackets omitted)).

*Hall v. Carter* (*In re Carter*), No. 13-3094, 2014 WL 4187123, at *4, 2014 Bankr LEXIS 3547, at *12-13 (Bankr. E.D. Tenn. Aug. 21, 2014) (denying summary judgment on the issue of intent under § 523(a)(6)); *cf. JPMorgan Chase Bank, N.A. v. Brown* (*In re Brown*), No. 12-04304, 2013 WL 6530490, at *6, 2013  Bankr. LEXIS 5279, at *15 (Bankr. E.D. Mich. Dec. 9, 2013) (stating that "[q]uestions of intent, scienter, and good faith are generally fact-intensive" and denying summary judgment under § 523(a)(2)(B)); *FIA Card Servs., N.A. v. Wagner* (*In re Wagner*), No. 11-3020, 2012 WL 6737830, at *5-6, 2012 Bankr. LEXIS 5932, at *14 (Bankr. N.D. Ohio Dec. 28, 2012) (stating that when "a debtor's subjective intent is at issue, summary judgment is generally inappropriate unless all reasonable inferences defeat the claims of the opposing party" and denying summary judgment under §§ 523(a)(2)(A) and 523(c)(2)(C)(i)(I)); *Keybank Nat'l Ass'n v. Martinez,* (*In re Martinez*), No. 10-1403, 2011 WL 2925481, at *4, 2011 Bankr. LEXIS 2771, at *11 (Bankr. N.D. Ohio July 18, 2011) (stating that summary judgment is generally not appropriate when intent is at issue (citing *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002)) and denying summary judgment under §§ 523(a)(6) and 727(a)(2)); *Behler-Young Co. v. Cousino* (*In re Cousino*), 364 B.R. 289, 296 (Bankr. N.D. Ohio 2006) ("[S]tate of mind issues, such as fraudulent intent under § 523(a)(2)(A), are generally not appropriate for resolution on summary judgment . . . ." (internal quotation marks omitted)).

Even if the court were to find that Plaintiff has established all other elements under § 523(a)(2)(A), because the record does not establish that Montanari had the requisite intent under § 523(a)(2)(A), summary judgment is not appropriate on this claim.

### B.  Section 523(a)(2)(B)

Plaintiff also seeks summary judgment pursuant to § 523(a)(2)(B) with respect to the

Forbearance Agreement, arguing that Defendants obtained a forbearance from foreclosure

proceedings based directly on false representations made to Plaintiff – i.e., that Defendants,

contrary to their assertions to Plaintiff, had the means to repay sums due and owing to Plaintiff

because of the unauthorized and undisclosed withdrawals from Montie's and Emlyn Coal. [Doc.

41 at p. 21.]  A determination of nondischargeability under § 523(a)(2)(B) requires proof that

Plaintiff loaned money to Defendants after Plaintiff reasonably relied upon false financial

documents concerning Defendants and/or an insider of them which were provided to Plaintiff by

Defendants either directly or indirectly, and that Defendants intended to deceive Plaintiff. *See* 11

U.S.C. § 523(a)(2)(B); *Copeland*, 291 B.R. at 780.

As with subsection (A), nondischargeability under § 523(a)(2)(B) also requires an intent

to deceive.  Intent to deceive does not, however, "require [proof] that the Defendant acted with a

'malignant heart.' . . .  [I]ntent to deceive may be inferred through the Defendant's actions and is

established if he personally submitted or allowed to be submitted financial documents that he

knew were untrue, even without a subjective intent to deceive." *Regions Bank v. Whisnant (In re

Whisnant)*, 411 B.R. 559, 570 (Bankr. E.D. Tenn. 2009) (quoting *Heritage Bank of St. Joseph v.

Bohr (In re Bohr)*, 271 B.R. 162, 169 (Bankr. W.D. Mo. 2001); *Copeland*, 291 B.R. at 786); *see

also Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 90 (6th Cir. 1993).

Additionally, although subsections (A) and (B) of § 523(a)(2) are mutually exclusive –

because subsection (A) excludes statements "other than a statement respecting the debtor's . . .

financial condition" and subsection (B) expressly applies to "a statement in writing . . .

respecting the debtor's . . . financial condition" – if "a court determines that a debtor committed

fraud for the purposes of either subsection of § 523(a)(2), "'any debt' arising from that fraudulent conduct is excepted from discharge." *Copeland*, 291 B.R. at 759 (quoting *Alworth v. Levy (In re Levy)*, 250 B.R. 638, 642 (Bankr. W.D. Tenn. 2000) (citations omitted)).

Nothing in this record establishes that Montanari either (1) intended to deceive Plaintiff concerning the Forbearance Agreement or (2) submitted financial documents to Plaintiff that Montanari knew were false. Indeed, Plaintiff's submission of facts in support of his claim under § 523(a)(2)(B) solely concern the fact that L. Montanari claims that she did not actually sign the Forbearance Agreement. The record is devoid of evidence that Montanari knew at the time that his wife had not signed the agreement or that any false information otherwise was provided to Plaintiff to induce his forbearance. Accordingly, summary judgment is denied as to Plaintiff's § 523(a)(2)(B) claim.

### C.  Section 523(a)(4)

Plaintiff next seeks summary judgment under § 523(a)(4), which allows a debt obtained by embezzlement, larceny, or through fraud or defalcation while acting in a fiduciary capacity to be nondischargeable. Plaintiff argues that Defendants embezzled funds from Montie's and Emlyn Coal (1) through withdrawals made by Montanari in the amount of at least $1,747,212.08 and (2) when Montanari withdrew funds totaling at least $742,600.23 for use other than for operations of Emlyn Coal and/or Montie's from 2008 through 2009.

For purposes of § 523(a)(4), embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996). Embezzlement is demonstrated by proof that the creditor entrusted property to the debtor who then appropriated it for a use other than the entrusted use and the circumstances indicate fraud or

deceit. *See Bd. of Trs. v. Bucci (In re Bucci)*, 493 F.3d 635, 644 (6th Cir. 2007) (citing *Brady*, 101 F.3d at 1173); *Dantone v. Dantone (In re Dantone)*, 477 B.R. 28, 39 (B.A.P. 6th Cir. 2012). "Both the intent and the actual misappropriation necessary to prove embezzlement may be shown by circumstantial evidence . . . , [and] the Plaintiff must prove fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." *WebMD v. Sedlacek (In re Sedlacek)*, 327 B.R. 872, 880-81 (Bankr. E.D. Tenn. 2005) (citations and quotation marks omitted); *see also Bombardier Capital, Inc. v. Tinkler (In re Tinkler)*, 311 B.R. 869, 876-77 (Bankr. D. Colo. 2004) (quoting *Driggs v. Black (In re Black)*, 787 F.2d 503, 507 (10th Cir. 1986)). A finding of embezzlement does not, however, require the existence of a fiduciary relationship, *Sedlacek*, 327 B.R. at 880, and "a mere lien or security interest does not rise to the level of ownership sufficient to support a claim under § 523(a)(4)'s embezzlement provision." *Hulsing Hotels Tenn., Inc. v. Steffner (In re Steffner)*, 479 B.R. 746, 766 (Bankr. E.D. Tenn. 2012); *see also Kraus Anderson Capital, Inc. v. Bradley (In re Bradley)*, 507 B.R. 192, 200 (B.A.P. 6th Cir. 2014) ("As owner of the collateral, the debtor remained the owner of its proceeds, even though both the collateral and its proceeds were subject to a security interest. No person can embezzle from himself." (citation omitted)).

"Both the intent and the actual misappropriation necessary to prove embezzlement may be shown by circumstantial evidence." *Goodmar, Inc. v. Hamilton (In re Hamilton)*, 306 B.R. 575, 582 (Bankr. W.D. Ky. 2004) (citations omitted); *see also Estate of Harris v. Dawley (In re Dawley)*, 312 B.R. 765, 779 (Bankr. E.D. Pa. 2004) (holding that fraudulent intent can be deduced by examining "the facts and circumstances surrounding the act" (citation omitted)). "The fraud element may also be satisfied by a showing of deceit . . . , and intent can be inferred

from the relevant circumstances." *Powers v. Powers (In re Powers)*, 385 B.R. 173, 179-80 (Bankr. S.D. Ohio 2008).

Plaintiff argues that the court should draw a negative inference as to Defendants' intent from their invocation of their Fifth Amendment rights during their depositions.  As observed by this court in 2008, however, "[m]any courts have 'expressed doubt as to whether a court can draw [negative] inferences at the summary judgment stage, where all reasonable inferences must be drawn for the non-movant, *Marrama v. Citizens Bank of Mass.* (*In re Marrama*), 445 F.3d 518, 522 (1st Cir. 2006), and it is within the discretion of the trial court whether to apply a negative inference.' *DirecTV v. Lovejoy*, 366 F. Supp. 2d 132, 137 (D. Me. 2005)."  *Hendon v. Lufkin* (*In re Lufkin*), 393 B.R. 585, 594 n.7 (Bankr. E.D. Tenn. 2008).  The court does not find that a negative inference concerning intent should be drawn at the summary judgment stage in this case.

As noted by Plaintiff, Montanari "claim[s] that the withdrawals, sometimes referred to as 'loans to shareholder', [*sic*] were authorized as a result of [] Montanari's status as 'the sole member of Monties [*sic*] and Emlyn [Coal] limited liability companies'."  [Doc. 41 at p. 13.] Although Plaintiff asserts that such an argument is without merit because the Forbearance Agreement and Loan Modification Agreement contain terms that should make it clear that such withdrawals were unauthorized, such does not establish the requisite evidence of intent under § 523(a)(4).  Plaintiff certainly could meet the summary judgment standard on a breach-of-contract claim, but the circumstances as shown in this record are insufficient to establish fraud-in-fact as a matter of law.

### D.  Section 523(a)(6)

Lastly, Plaintiff seeks summary judgment against Defendants "for willful and malicious injury by the debtor to another entity or to the property of another entity[,]" 11 U.S.C. § 523(a)(6), arguing that Defendants' withdrawals of at least $1,747,212.08 from Montie's and Emlyn Coal injured Plaintiff's collateral.  In order to prevail under subsection (a)(6), Plaintiff must prove the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  Plaintiff must also show that Defendants either desired to cause the consequences of their actions or believed with reasonable certainty that such consequences would occur. *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999).  "That a reasonable debtor 'should have known' that his conduct risked injury to others is simply insufficient.  Instead, the debtor must 'will or desire harm, or believe injury is substantially certain to occur as a result of his behavior.'" *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002) (quoting *Markowitz*, 190 F.3d at 465 n.10).  Additionally, "the injury must invade the creditor's legal rights." *Steiner v. Best (In re Best)*, 109 F. App'x 1, 6 (6th Cir. 2004).  Accordingly, under Sixth Circuit authority, "unless the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz*, 190 F.3d at 464.

Nondischargeability under subsection (a)(6) "requires that the alleged injury be both willful and malicious." *Trost v. Trost (In re Trost)*, 510 B.R. 140, 149 (Bankr. W.D. Mich. 2014); *S. Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006) ("Although the 'willful' and 'malicious' requirements will be found concurrently in most cases, the terms are distinct, and both requirements must be met under §

20

523(a)(6)."). "An act will be deemed 'willful' only if it was undertaken with the actual intent to cause injury," *Cash Am. Fin. Servs. v. Fox (In re Fox)*, 370 B.R. 104, 119 (B.A.P. 6th Cir. 2007), requiring the court to "look into the debtor's mind subjectively" in order to determine whether the debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act." *Monsanto Co. v. Wood (In re Wood)*, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004).

As explained above, when the subjective intent of the non-moving party is a necessary element of a claim, summary judgment should be denied except in the clearest of cases. This case is not so clear on the record before the court. Accordingly, summary judgment is denied on Plaintiff's claim under § 523(a)(6).

## IV.  Conclusion

Because there exist genuine issues of material fact as to each of Plaintiff's claims under § 523, Plaintiff has not met his burden under Rule 56. Therefore, Plaintiff's Motion for Summary Judgment is denied.

FILED:  February 12, 2015

BY THE COURT

*/s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE
