**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

BARTOLOMEA JOSEPH MONTANARI
LISA JAYNE MONTANARI

       Debtors

DAVID N. KLOEBER, JR.

       Plaintiff

    v.

BARTOLOMEA JOSEPH MONTANARI
and LISA JAYNE MONTANARI

       Defendants

Case No. 3:12-bk-33189-SHB

Adv. Proc. No. 3:13-ap-3079-SHB

**MEMORANDUM ON
<u>MOTION TO ENFORCE SETTLEMENT AGREEMENT</u>**

**APPEARANCES**:    FROST BROWN TODD LLC
        Jason M. Bergeron, Esq.
        150 3rd Avenue South
        Suite 1900
        Knoxville, Tennessee  37201
        Attorneys for Plaintiff

        WILLIAM E. MADDOX, JR., LLC
        William E. Maddox, Esq.
        Post Office Box 31287
        Knoxville, Tennessee 37930
        Attorneys for Defendants

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

On September 8, 2015, Plaintiff filed a Motion to Enforce Settlement Agreement, asking the Court to compel Defendants to execute the Settlement Agreement attached as Exhibit 3 to his Memorandum of Law in Support of Motion to Enforce Settlement Agreement (collectively referred to for the purposes herein as "Motion to Enforce"), providing, *inter alia*, that (1) Plaintiff will be granted a nondischargeable judgment in the amount of $2,000,000.00 against Defendant Bartolomea Montanari and a nondischargeable judgment in the amount of $1,000,00.00 against Defendant Lisa Montanari; (2) as long as Plaintiff receives an annual interest payment at the current federal statutory interest rate, he will not seek enforcement of the judgment against Mr. Montanari while he serves his federal prison sentence; (3) if Mrs. Montanari makes installment payments to Plaintiff totaling $100,000.00 plus accrued interest over a payment schedule agreed to by Plaintiff, the judgment against her will be deemed satisfied; and (4) to the extent the Complaint objects to Defendants' discharge under 11 U.S.C. § 727, Plaintiff will seek to dismiss it.  In support of the Motion to Enforce, Plaintiff argues that although Defendants accepted the settlement terms, they have not executed and finalized the Settlement Agreement that Plaintiff's counsel first tendered to Defendants on July 2, 2015, and on a number of occasions since.  Plaintiff also seeks payment of the attorneys' fees and expenses he incurred by filing this Motion to Enforce, to be assessed jointly and severally against Defendants and their counsel.

The Limited Objection of the Defendants to the Motion to Enforce the Settlement filed on October 2, 2015, was not timely filed and, therefore, was not considered.  Because Defendants did not file a timely response to the Motion to Enforce within the 21-day response time set forth in E.D. Tenn. LBR 7007-1(a), i.e., no later than September 29, 2015, their failure to respond

1

timely is construed by the Court to mean that they do not oppose the relief requested in the Motion to Enforce.

Based on the record before it, the Court finds that the parties entered into a binding and valid settlement of this adversary proceeding, with material agreed-upon terms accepted by Defendants' counsel on May 28, 2015, and announced to the Court at the final pretrial conference held on June 2, 2015.  Because Defendants have failed to execute and return the Settlement Agreement to Plaintiff's counsel since first receiving it three months ago, and because there is no assurance that they will comply with an order of this Court directing them to sign the agreement, the Court declines to compel Defendants to execute the Settlement Agreement and, instead, will enter a judgment containing the provisions expressly outlined in the May 27 and 28, 2015 emails between Plaintiff's and Defendants' counsel and announced to the Court on the record at the June 2 final pretrial conference.[1]  The Court also finds that, based on their unwillingness to cooperate and memorialize the settlement agreement announced to the Court, Defendants shall be required to pay the reasonable attorneys' fees and expenses incurred by Plaintiff for filing and prosecuting this Motion to Enforce.  The Court, however, does not find any basis for holding Defendants' attorney jointly and severally liable for those fees.

## I.  RELEVANT FACTS[2]

Plaintiff and Mr. Montanari, acting as Chief Manager/President of Montie's Resources, LLC, entered into a business relationship in July 2007, through which Plaintiff agreed to finance

---

[1] The Court's decision not to enter an order compelling Defendants to execute the Settlement Agreement but, instead, to enter a judgment resolving this adversary proceeding does not preclude Defendants from executing a settlement agreement containing agreed definitions and terms, so long as such terms are not contrary to the findings contained in this Memorandum and the judgment to be entered.

[2] These abbreviated facts were stipulated by the parties in connection with the Motion for Summary Judgment filed by Plaintiff in July 2014, and subsequently denied by the Court on February 12, 2015, and, therefore, are not in dispute and are facts of record in this adversary proceeding.  In addition to facts expressly admitted by the parties, the Court includes references only to facts for which citation to admissible record evidence was provided.

2

the purchase of Emlyn Coal Processing, LLC to pursue coal mining activities in Whitley County, Kentucky. As partial security for the financing, Defendants, individually, executed a guaranty for repayment of all sums owed to Plaintiff. In response to cash shortages from a lack of coal production, between 2008 and 2009, Plaintiff agreed to personally guarantee an additional working capital loan, made equipment acquisition loans to Montie's Resources, LLC in order to increase production, and provided approximately $1,600,000.00 for equipment financing. Additionally, Plaintiff and Mr. Montanari met in October 2008 to discuss purchasing a bulldozer from Frattalone Tractor Company, and in November 2008, Mr. Montanari arranged the financing of the bulldozer through a lease agreement in the amount of $275,000.00, representing to Plaintiff, who personally guaranteed the purchase, that the cost was $260,000.00 plus $15,000 in delivery charges. The actual price of the bulldozer, however, was $175,000.00, and the $100,000.00 overpayment was paid to Mr. Montanari in the form of a certified check. On January 6, 2009, Mr. Montanari negotiated the $100,000.00 certified check. Plaintiff was later sued by the finance company for payment of the balance owed on the bulldozer, the majority of which consisted of the $100,000.00 received by Mr. Montanari.

In January 2009, Mr. Montanari purchased Plaintiff's interest in Emlyn Coal Processing, LLC, financed by Plaintiff through a loan modification agreement,[3] after which Mr. Montanari was authorized to withdraw from Montie's Resources, LLC and/or Emlyn Coal Processing, LLC up to $50,000.00 per month in cumulative salary, distribution, or other form of compensation or profit as long as no event of default had occurred. Between 2009 and 2012, Defendants made personal purchases of at least $70,084.15 on a credit card issued to Emlyn Coal Processing, LLC and withdrew and/or transferred cash in the aggregate amount of $1,352,309.16 to themselves,

---

[3] Mr. Montanari executed the loan documents individually and as President and General Partner; however, although Mrs. Montanari's signature appears on the documents, she has not admitted signing them.

3

two Minnesota limited liability companies, and a personal friend. In association with the financing, Plaintiff had deemed all interest payments current as of January 2009, with the first principal payment due to him in March 2009. No payments, however, were made to Plaintiff for this financing, and he took steps to begin foreclosure proceedings that were subsequently halted when the parties entered into a forbearance agreement through which Plaintiff agreed to forbear enforcement of the $11,574,775.03 indebtedness as of April 5, 2010, but required, among other things, Defendants to personally guarantee payment of the indebtedness.[4]

Defendants filed the Voluntary Petition commencing their joint bankruptcy case on August 3, 2012, and on August 15, 2013, Plaintiff timely filed the Complaint in Objection to Dischargeability of Debts Owed by Bartolomea Joseph and Lisa Jayne Montanari Pursuant to 11 U.S.C. § 523 and 11 U.S.C. § 727, asking the Court to award him a judgment of no less than $14,500,000.00, together with attorneys' fees, costs, and punitive damages; to determine that debts owed by Defendants to him are nondischargeable under 11 U.S.C. § 523(a)(2), (4), and/or (6); and to deny Defendants their discharge pursuant to 11 U.S.C. § 727(a)(2), (3), (4), and/or (7).[5]

In May 2014, during the pendency of the bankruptcy case, Mr. Montanari was indicted in the District of Minnesota, and in November 2014, a jury found him guilty of mail and wire fraud charges. He was sentenced on September 9, 2015, to a term of six years, according to Defendants' counsel's representation at the September 10, 2015 status conference before this Court.

---

[4] Although all signatures on the forbearance agreement are notarized, Mrs. Montanari has expressly denied executing it.

[5] The Complaint was timely filed because the deadline for Plaintiff to object to dischargeability and/or discharge was extended to August 16, 2013, by the Agreed Order Resolving Debtors' Motion to Deem the 2004 Examination Concluded that was entered on July 16, 2013.

Plaintiff filed a motion seeking partial summary judgment for his claims made under § 523(a)(2), (4), and/or (6) on July 15, 2014, which was denied by the Court on February 12, 2015, and trial was scheduled for June 22, 23, and 24, 2015, with a final pretrial conference to be held on June 2, 2015. At the final pretrial conference on June 2, 2015, the parties announced to the Court, on the record, that there would be no trial because a settlement had been reached; i.e., that Plaintiff will be granted nondischargeable judgments against Mr. Montanari in the amount of $2,000,000.00 and against Mrs. Montanari in the amount of $1,000,000.00, that Plaintiff will not enforce Mr. Montanari's judgment while he is in jail as long as he makes an annual payment for the accrued interest, that Mrs. Montanari's judgment can be satisfied through "a structured payment stream" of $100,000.00, and that Plaintiff will take the necessary steps required to dismiss his claims objecting to Defendants' discharge under 11 U.S.C. § 727. The Court directed the parties to file by July 7, 2015, either settlement documents or a status report.

On July 7, 2015, the parties filed a Joint Status Report stating that they anticipated submission of a motion to approve the settlement within the following two weeks. Because a motion was not filed, the Court entered an Order on August 11, 2015, directing the parties to appear for a status conference on September 10, 2015. Plaintiff subsequently filed the Motion to Enforce on September 8, 2015.

## II. ANALYSIS

**A.     Plaintiff's request that Defendants be compelled to execute the Settlement Agreement**

The Sixth Circuit "has long recognized the broad, inherent and equitable power" of the courts "to enforce an agreement in settlement of litigation pending before it, even where that agreement has not been reduced to writing. Once concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment[.]" *Bostick Foundry*

5

*Co. v. Lindberg*, 797 F.2d 280, 282-83 (6th Cir. 1986) (internal citations omitted); *see also Miller v. Prompt Recovery Servs., Inc.*, No. 5:11-CV-2292, 2014 WL 4230895, at *2, 2014 U.S. Dist. LEXIS 118568, at *4 (N.D. Ohio Aug. 25, 2014) ("The existence of a settlement agreement is not diminished by the fact that the parties have not reduced it to writing, nor may a party withdraw assent to a settlement agreement simply because not all parties have signed it." (citations omitted)); *Eagle Capital Funding, LLC v. Lowman Finishing, Inc.*, No. 1:03-CV-207, 2005 WL 1077726, at *5, 2005 U.S. Dist. LEXIS 6980, at *15 (E.D. Tenn. Mar. 8, 2005) (holding that the court's authority allows enforcement of settlement agreements "even though the agreement has not been reduced to writing or signed by the parties" after it "ascertain[s] whether an agreement was reached on all material terms." (citations omitted)). Unquestionably, this Court possesses the authority to enforce adversary proceeding settlements "where an agreement is clear and unambiguous and no issue of fact is present." *Dillow v. Ashland, Inc.*, 188 F.3d 507 (Table), 1999 WL 685941, at *1, 1999 U.S. App. LEXIS 20354, at *4 (6th Cir. Aug. 24, 1999); *see also Edmonson v. Wilson*, No. E2010-02215-COA-R3-CV, 2011 WL 6147014, at *3, 2011 Tenn. App. LEXIS 656, at *7 (Tenn. Ct. App. Dec. 9, 2011) (stating that Tennessee courts likewise retain the inherent power to enforce litigation settlements even if the agreement has not been reduced to writing)).

Settlement agreements are essentially contracts governed by state substantive law. *Cogent Solutions Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013); *accord Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012) ("A settlement agreement made during the course of litigation is a contract between the parties, and as such, contract law governs disputes concerning the formation, construction, and enforceability of the settlement agreement."). Under Tennessee law, contracts may be "express, implied, written or oral, but regardless, 'an

6

enforceable contract must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 543 (Tenn. Ct. App. 2011) (quoting *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (citations omitted)).

As evidenced by the emails between Plaintiff's and Defendants' counsel dated May 27 and 28, 2015, marked as Exhibit 2 to the Motion to Enforce, Defendants' counsel expressly stated that he had the authority "to accept the 2 million liability judgment for Bart and the 1 million for Lisa, with the agreement she will repay $100,000. We still need to hammer out other terms but we have an agreement on those amounts as outlined below" concerning the following settlement terms offered by Plaintiff:

> 1) For Bart, a nondischargeable, liability judgment for $2,000,000. We will agree to not seek to enforce the judgment while Bart is in jail if Bart agrees to make an annual interest payment, at the current federal statutory interest rate, on that judgment amount. In exchange, we will dismiss all Sec. 727 claims.
>
> 2) For Lisa, a nondischargeable, liability judgment for $1,000,000, but the judgment will be satisfied in full if she makes installment payments over an agreed schedule totaling $100,000 (with interest accruing). The no prepayment penalty is fine. In exchange, we will dismiss all Sec. 727 claims.

[Doc. 111, Ex. 2]. These emails unquestionably contain the essential terms of the parties' settlement,[6] and the Court finds that a valid, enforceable agreement to settle this adversary proceeding was reached between Plaintiff and Defendants.

Additionally, as evidenced by the transcript thereof, at the June 2 final pretrial conference, Defendants' counsel expressly stated on the record in open court that the parties had

---

[6] Although it does not appear certain to the Court that the settlement agreement here implicates Tennessee's Statute of Frauds (Tenn. Code Ann. § 29-2-101), and such has not been raised as an affirmative defense as required by Tennessee law, the Court finds that the email exchanges are sufficient to satisfy the Statute of Frauds if it does apply. *See Waddle*, 367 S.W. at 228.

7

reached an agreement settling the "major details" of the controversy, after which Plaintiff's counsel outlined the aforementioned settlement terms on the record.[7] [Doc. 115.] "[O]ral stipulations [of issues and fact] made in open court and accepted by the court are valid and will be enforced." *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000). Thus, because a party's consent to judgment may be made orally "by or on behalf of the parties in open court," *id.* at 537 (quoting 49 C.J.S. *Judgments* § 184 (1997)), an oral stipulation of compromise and settlement between parties to litigation is considered a binding settlement agreement if it was announced by parties' attorneys in open court and preserved in the court's record. *See Harvey v. Turner*, No. M2014-00368-COA-R3-CV, 2015 WL 1451702, at *4-5, 2015 Tenn. App. LEXIS 154, at *14 (Tenn. Ct. App. Mar. 26, 2015) (citing *Envtl. Abatement, Inc.*, 27 S.W.3d at 540 (quoting 15A C.J.S. *Compromise and Settlement* § 17 at 214-215 (citations omitted)). That the parties had reached a settlement agreement, although not yet memorialized, was reiterated in the Joint Status Report filed on July 7, 2015. Defendants' failure to execute the Settlement Agreement does not relieve them of the settlement terms to which they agreed.

    **B.**    **Plaintiff's request that Defendants and their counsel pay attorneys' fees and expenses**

Plaintiff has also requested an award of attorneys' fees and expenses incurred in the prosecution of the Motion to Enforce, asking the Court to use its inherent power under 11 U.S.C. § 105(a), which allows the Court to issue orders necessary to carry out the provisions of the Bankruptcy Code and take any action to prevent an abuse of process. Although this statutory authority is broad, it is not limitless: "§ 105(a) . . . may not be used to circumvent the Bankruptcy Code, and does not create a private cause of action unless it is invoked in connection

---

[7] Defendants' counsel also offered at the September 10 status conference that Defendants do not oppose the Motion to Enforce except for the request that Defendants' counsel be held liable for Plaintiff's attorneys' fees.

8

with another section of the Bankruptcy Code." *French v. Am. Gen. Fin. Servs. (In re French)*, 401 B.R. 295, 313 (Bankr. E.D. Tenn. 2009) (citations and quotation marks omitted). "For purposes of this section, abuse of process has been defined as 'maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system.'" *In re Appalachian Oil Co., Inc.*, No. 09-50259, 2010 WL 2430774, at *4, 2010 Bankr. LEXIS 1950, at *12-13 (Bankr. E.D. Tenn. June 11, 2010) (quoting *In re Eagle-Picher Indus., Inc.*, 169 B.R. 135, 138 (Bankr. S.D. Ohio 1994)). In addition to the statutory authority provided bankruptcy courts by § 105(a), all federal courts, including the bankruptcy court, have the inherent authority to sanction misconduct. *In re Mehlhose*, 469 B.R. 694, 708-09 (Bankr. E.D. Mich. 2012). "The federal courts' inherent power to protect the orderly administration of justice and to maintain the authority and dignity of the court extends to a full range of litigation abuses . . . [including but not limited to bad faith, violation of court orders, and authorizes the court] to sanction a party who 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298, 2001 WL 1216978, at *6, 2001 U.S. App. LEXIS 21665, at *17 (6th Cir. Oct. 3, 2001) (quoting *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 955 (4th Cir. 1995)).

      The parties announced the terms of the settlement to the Court at the June 2 final pretrial conference; however, nearly five months later, there is still no executed settlement document, and the adversary proceeding is still pending. At the time that the agreement was reached, Mr. Montanari was in federal custody in Minnesota awaiting sentencing, and everyone recognized that time was of the essence in obtaining his signature and ratification of the settlement. Even though Defendants authorized their counsel to approve the settlement, they have not signed the proposed Settlement Agreement and have provided no explanation for their delay. The Court

9

finds that Defendants' unwillingness to finalize the settlement documents memorializing their agreed-upon resolution to this adversary proceeding constitutes an unreasonable delay, a waste of judicial resources, and an abuse of process. As a result, the Court imposes the appropriate sanction of requiring Defendants to pay Plaintiff's reasonable attorneys' fees and expenses incurred in filing and prosecuting the Motion to Enforce. The Court, however, finds no basis whatever for imposing joint and several liability for such attorneys' fees and expenses on Defendants' counsel, and Plaintiff's request for such is denied.

### III. CONCLUSION

In summary, the Court finds that the parties entered into a binding settlement agreement that was announced on the record to the Court on June 2, 2015, through which Plaintiff will be granted a nondischargeable judgment in the amount of $2,000,000.00 and $1,000,000.00 against Mr. Montanari and Mrs. Montanari, respectively; that Plaintiff will not seek enforcement of the judgment against Mr. Montanari while he serves his prison sentence as long as Plaintiff receives an annual interest payment at the current federal statutory interest rate; that the judgment against Mrs. Montanari will be deemed satisfied if she makes installment payments totaling $100,000.00 plus accrued interest over a payment schedule agreed to by Plaintiff; and that Plaintiff will file the necessary motions to seek dismissal of the Complaint filed against Defendants to the extent that it objects to their discharge under 11 U.S.C.§ 727.[8] Because Defendants have failed to execute a document memorializing this binding settlement agreement, the Court will enter a judgment to enforce the agreement. Additionally, because Defendants have unreasonably delayed resolution of this matter, wasting judicial resources and abusing the Court's processes,

---

[8] The procedure required to seek dismissal of an adversary complaint objecting to a debtor's discharge is governed by E.D. Tenn. LBR 9019-1(a) and (d).

they will be required to pay the reasonable attorneys' fees and expenses incurred by Plaintiff to file and prosecute the Motion to Enforce.

The Court will enter a Judgment and appropriate orders consistent with this memorandum.

FILED:  October 29, 2015

>                               BY THE COURT
>
>                               */s/ Suzanne H. Bauknight*
>
>                               SUZANNE H. BAUKNIGHT
>                               UNITED STATES BANKRUPTCY JUDGE